

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-0287-20

---

**HAPPY TRAN PHAM, Appellant**

v.

**THE STATE OF TEXAS**

---

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTEENTH COURT OF APPEALS
### HARRIS COUNTY

---

SLAUGHTER, J., filed a concurring opinion in which RICHARDSON and WALKER, JJ., joined.

### <u>CONCURRING OPINION</u>

While I agree that Appellant's conviction should be upheld based on harmless error, I would hold that Appellant was entitled to receive the Section 9.04 instruction to clarify for the jury the issue of provocation. Therefore, I write separately to address this issue.

Under Penal Code Section 9.04, a threat to use force against another is justifiable in the same manner as the use of force. *See* TEX. PENAL CODE § 9.04 ("The threat of force is justified when the use of force is justified" under Chapter 9). A person is justified in displaying a weapon for the purpose of discouraging a deadly assault if he reasonably believes that such action is immediately necessary to protect himself against the other person's use or attempted use of unlawful force, and if his purpose in producing the weapon is "limited to creating an apprehension that he will use deadly force if necessary." *Id.* §§ 9.04, 9.31.

In this case, Appellant claimed that he pulled out his gun for this exact purpose—to dissuade the decedent from continuing to reach for his weapon—but that when such threat did not successfully dissuade the decedent from reaching for his weapon, he shot the decedent. Today the majority holds that these facts do not entitle Appellant to a jury instruction under Section 9.04 because he actually used deadly force, rather than merely threatening deadly force. I respectfully disagree. Because the jury was also instructed on the law of provocation here, an instruction under Section 9.04 was needed to inform the jury that Appellant's conduct in pulling out his weapon did not necessarily make him the first aggressor and may be justifiable as self-defense. Given these circumstances, I would hold that Appellant was entitled to the Section 9.04 instruction so that the jury would be fully apprised of Appellant's right to display a weapon if he reasonably believed that such display was immediately necessary to protect himself. I would, therefore, hold that the instructions were erroneous in this regard. But because such error was harmless in light of

the other trial evidence, I would uphold the court of appeals' judgment affirming the conviction.

## I.     Background

Appellant and Pierre Mai had a contentious history. Several months before the shooting, the conflict between Appellant and Mai became physical. Mai approached Appellant in public, "started swinging at [him]," and police had to intervene. Appellant testified that after this fight, he agreed not to escalate the situation any further. But according to Appellant, Mai's friends furthered the feud a few months later at a Halloween party. Mai's friend "bumped" into Appellant and a fight broke out between Mai's and Appellant's friends. When the fight was seemingly over, Appellant was struck in the face with a beer bottle. Appellant also testified that he heard Mai was involved in a drive-by shooting, which made him realize that the situation could become deadly.

On the day of the shooting, Appellant had plans to go to dinner at a restaurant with a group of friends and family. On his way to the dinner, he learned that Mai was also at the restaurant. Appellant testified that he "was over the situation" so he decided to go to the restaurant anyway. He walked into the restaurant and out of the corner of his eye, he saw Mai jump up. Knowing Mai to carry a weapon with him, Appellant believed Mai was about to reach for his gun. Appellant drew his weapon. He testified he did so as a warning to Mai in an effort to prevent Mai's use of deadly force against him. Appellant further testified that despite this attempt, he observed Mai continue to reach for his own weapon and begin to point it at Appellant. Appellant then shot Mai.

The trial court granted Appellant's request for a jury instruction on self-defense. The instructions provided a summary of the law of self-defense under Penal Code Sections 9.31 and 9.32 (governing the use of deadly force). The instructions also included a provocation instruction, providing that a defendant's use of force is not justified if he provoked the other person's use or attempted use of unlawful force, unless (1) "the defendant abandon[ed] the encounter, or clearly communicated his intent to do so reasonably believing he cannot safely abandon the encounter," and (2) "the other person nevertheless continue[d] or attempt[ed] to use unlawful force against the defendant." The application paragraph of the charge defined provocation as doing "some act, or us[ing] some language, or [] both, as the case may be, with the intent on his, the defendant's part, to produce the occasion for shooting Pierre Mai, and to bring on the difficulty with the said Pierre Mai, and that such words and conduct on the defendant's part, if there was such, were reasonably calculated to, and did, provoke a difficulty[.]"

Appellant also requested an instruction under Penal Code Section 9.04, governing threats to use force. In support of his request for the Section 9.04 instruction, Appellant argued that inclusion of this additional charge would "give[] the jury an understanding of at what point . . . to apply the secondary deadly force charge . . . ." In other words, the jury would be able to consider, as two distinct inquiries, whether Appellant was justified in *drawing* his weapon initially for the purpose of deterring Mai from reaching for his weapon, and whether Appellant was further justified in *using* his weapon when Mai was ultimately undeterred. The trial court rejected the request for the Section 9.04 instruction because it did not "really think that § 9.04 applie[d]" to the case. The appellate court

summarily agreed with the trial court. It concluded that Appellant was not entitled to the instruction because he actually used deadly force, rather than only the threat of deadly force. *Pham v. State*, 595 S.W.3d 769, 779 (Tex. App.—Houston [14th Dist.] 2019).

## II.     Analysis

A defendant is entitled to an instruction on self-defense if the issue is raised by the evidence, regardless of whether that evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the defense. *Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001). On appeal, in determining whether a defendant was entitled to an instruction on self-defense, we must view the evidence in the light most favorable to Appellant's requested submission. *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006).

Texas Penal Code Section 9.04 is a part of the law of self-defense. *Gamino v. State*, 537 S.W.3d 507, 510 (Tex. Crim. App. 2017). That provision states:

> The threat of force is justified when the use of force is justified by this chapter. For purposes of this section, a threat to cause death or serious bodily injury by the production of a weapon or otherwise, as long as the actor's purpose is limited to creating an apprehension that he will use deadly force if necessary, does not constitute the use of deadly force.

TEX. PENAL CODE § 9.04.

"Use of force" is justified "when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." TEX. PENAL CODE § 9.31(a). But "use of force" is not justified "if the actor provoked the other's use or attempted use of unlawful force[.]" *Id.* § 9.31(b)(4). However, if the actor did provoke the other's use or attempted use of unlawful force, but

he "abandons the encounter, or clearly communicates to the other his intent to do so reasonably believing he cannot safely abandon the encounter; and the other nevertheless continues or attempts to use unlawful force against the actor," then the actor may still be justified in his use of force. *Id.* § 9.31(b)(4)(A), (B).

Under the facts of this case, key to the jury's consideration of whether Appellant was justified in shooting Mai under the law of self-defense was whether Appellant provoked the situation with Mai. The State argued in closing that by the very fact that Appellant pulled out his handgun, he provoked the situation and therefore had no justification in shooting Mai. In addition, the jury charge included a non-statutory definition and instruction on provocation. Such information greatly increased the possibility that the jury would presume that Appellant's action in pulling a weapon first was *per se* provocation foreclosing a self-defense finding regardless of what they believed about the remaining evidence. Had the jury been instructed under Section 9.04 that the initial production of a weapon can be justified if the statutory requirements are met, then the jury could have more properly considered whether Appellant provoked the encounter with Mai. With such instruction, the jury could have considered whether Appellant was justified in drawing his weapon as a mere threat because his "purpose [was] limited to creating an apprehension that he will use deadly force if necessary[.]" TEX. PEN. CODE § 9.04. Then, if the jury found such justification and that the mere fact of drawing a weapon was not *per se* provocation, it could have gone on to consider whether Appellant was also justified in shooting Mai because his threat failed to deter Mai, and Appellant reasonably believed that Mai continued to reach for a weapon. Accordingly, based on Appellant's

testimony at trial, he raised sufficient evidence to justify submission of both a Section 9.04 and 9.31/9.32 instructions. The trial court erred in refusing the instruction under Section 9.04 and the court of appeals erred in upholding such refusal.

Nevertheless, I agree with the Court's ultimate conclusion that the denial of the instruction does not warrant reversal of Appellant's conviction because such error was not harmful under these particular circumstances. An error in the charge on self-defense is charge error subject to a harm analysis pursuant to *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985) (op. on reh'g). *See Jordan v. State,* 593 S.W.3d 340, 345-47 (Tex. Crim. App. 2020) (finding error in the charge on self-defense based on denial of multiple assailants instruction and examining such error for "some harm" under *Almanza*). If error was preserved through a timely request for the instruction, then reversal is warranted only if the denial of the requested instruction resulted in "some harm," which means actual harm rather than a theoretical complaint. *Id.* at 347. "[T]he actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171.

As discussed above, the State's arguments in closing and the inclusion of the provocation charge in the jury instructions arguably support a finding of some harm. However, to establish actual harm as opposed to theoretical harm, the evidence would need to present some plausible basis upon which the jury might have concluded that Appellant was justified in pulling his weapon initially as a threat with the sole purpose of de-escalating a potentially deadly conflict, and then was further justified in ultimately using

deadly force against Mai. In light of the totality of the evidence, no such plausible basis exists here. Witnesses testified that Appellant entered the restaurant and immediately approached Mai with his gun at his side saying, "Motherf**ker, you in my hood," "What the f**k you doing in my motherf**king hood?" or "Bitch, you're in my hood." Witnesses also testified that Mai never pulled a gun. Appellant shot Mai twice—once as Mai fell to the ground. Appellant then immediately fled the scene and disappeared for more than nine years. Considering the totality of the evidence, there is no realistic possibility that the jury would have found that Appellant was justified in both his initial threat of force and his ultimate use of deadly force, even if it had received the Section 9.04 instruction. Thus, although I believe it was error to deny the instruction, the record shows nothing more than theoretical harm under the facts of this case, such that reversal is not warranted.

## III.    Conclusion

Appellant testified that he drew his weapon to discourage a deadly conflict. Such was his right if he reasonably believed that threatening the use of force was immediately necessary to prevent Mai's use of force against him. The Court wrongly holds that Appellant was not entitled to a jury instruction informing the jury of this right. In doing so, we signal that Section 9.04 protects only empty threats. The right to draw a weapon as a threat in self-defense and the right to use a weapon in self-defense are separate inquiries— each protected under Texas law. I, therefore, disagree with the Court and would hold that Appellant was entitled to the Section 9.04 instruction. But because the refusal of the Section 9.04 instruction was not harmful in this case, I respectfully concur in the Court's judgment but do not join its opinion.

FILED: February 9, 2022
PUBLISH